# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAUL L.,

        Plaintiff,

    v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 23 CV 2958

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul L. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's request to reverse and remand [13][1] is denied, defendant's motion for summary judgment [19] is granted, and the decision denying the application for benefits is affirmed.

## Background

On August 6, 2020, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 24, 2016. [10-1] 17. Plaintiff's claim was denied initially on April 13, 2021, and upon reconsideration on January 27, 2022. [*Id.*] Plaintiff requested a hearing, which was held on June 16, 2022 before an administrative law judge (ALJ). [*Id.*] 17, 46–99. On August 1, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled from December 24, 2016, the alleged onset date, through December 31, 2021, the date last insured. [*Id.*] 17–39.

In the August 1, 2022 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the relevant period. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the knees, and degenerative disc disease of the lumbar spine. The ALJ also found that plaintiff had the following non-severe impairments:

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10], which refer to the page numbers in the bottom right corner of each page.

anxiety disorder, alcohol abuse disorder, benign essential tremor, hypertension, carpal tunnel syndrome, diverticular disease, hemorrhoids, acute pancreatitis, obesity, and diabetes. In assessing the four areas of functioning that make up the paragraph B criteria, the ALJ found that plaintiff had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace and no limitations in interacting with others and in adapting or managing oneself. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no working around unprotected heights or unprotected dangerous moving machinery; and frequent pushing and pulling with upper extremities (*e.g.*, use of arm/hand controls such as levers, ropes). At step four, the ALJ concluded that through the date last insured, plaintiff was capable of performing past relevant work as an admissions recruiter and restaurant manager. The ALJ nevertheless continued to step five and alternatively found that there were other jobs that existed in significant numbers in the national economy that plaintiff could have performed, including check cashier and telemarketer. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act from December 24, 2016, the alleged onset date, through December 31, 2021, the date last insured.

The Appeals Council denied review on March 9, 2023, [10-1] 1, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

Courts "apply a very deferential standard of review to the ALJ's decision." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (citation and internal quotations omitted). In its "extremely limited" role, *id.*, the Court must "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). *See also Stephens*,

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [7].

888 F.3d at 327 ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and h[er] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" *Chavez*, 96 F.4th at 1021 (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)).

## Discussion

Plaintiff argues that (1) the ALJ erred in assessing plaintiff's mental limitations and failed to resolve an evidentiary conflict between competing vocational expert testimonies and (2) the ALJ's symptom evaluation violated SSR 16-3p.

## A.    Assessment of Plaintiff's Mental Limitations

Plaintiff argues that although the ALJ found that plaintiff has mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, the ALJ failed to explain why she did not accommodate these limitations in the residual functional capacity (RFC). [13] 4–6, 7. Plaintiff asserts that the ALJ did not discuss plaintiff's mental limitations when assessing the RFC except to state that these limitations were not severe. [*Id.*] 6. *See also* [21] 2 (arguing that the ALJ committed reversible error by failing to weigh evidence of plaintiff's mental limitations). Plaintiff argues that this error is not harmless because no restrictions accounting for his mental limitations were included in the hypothetical presented to the vocational expert (VE). [13] 8.

The ALJ concluded that plaintiff's medically determinable mental impairments of anxiety disorder and alcohol abuse disorder were non-severe. [10-1] 23. In assessing the paragraph B criteria, the ALJ found that plaintiff had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace and no limitations in interacting with others and in adapting or managing oneself. [*Id.*] 23–24.[3] "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). This includes mild

---

[3] Plaintiff does not challenge these findings or argue that the ALJ should have found that plaintiff had greater limitations.

limitations in mental functioning. *Kathy A. v. Kijakazi*, No. 20-cv-2387, 2022 WL 2758001, *4 (N.D. Ill. July 14, 2022); *David K. v. Kijakazi*, No. 20-cv-1743, 2022 WL 2757695, at *4 (N.D. Ill. July 14, 2022); *Lawrence J. v. Saul*, No. 19 CV 1834, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020) ("Although by no means is it a given that a mild limitation in mental functioning will impact a claimant's ability to secure employment . . . the ALJ is still required to evaluate the effect of any mild limitations on the RFC[.]"); *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) ("While a mild, or even a moderate, limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment . . . the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC."). "But there is no requirement that restrictions from non-severe impairments must be included in the RFC assessment." *Lionel L. v. King*, No. 23 C 11667, 2025 WL 446150, at *5 (N.D. Ill. Feb. 10, 2025) (citing *Felts v. Saul*, 797 F. App'x 266, 268–70 (7th Cir. 2019)).

The ALJ specifically noted that "[t]he limitations identified in the 'paragraph B' criteria are not [an RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3" and that "[t]he mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment." [10-1] 24. The ALJ did continue and engage in this separate, more detailed evaluation: "The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." [*Id.*] 24. The ALJ's decision provided a comprehensive summary of the record evidence regarding plaintiff's mental limitations, including plaintiff's testimony, mental status and psychiatric evaluations, the consultative examinations, and opinion evidence. [*Id.*] 24–27. The state agency doctors opined that plaintiff had mild limitations in all four areas of functioning,[4] that "objective information shows that, while symptomatic, clmt does not experience severe functional limitations as a result of his mental impairment," and that "any mental impairment would impose no more than mild limitation in functioning and is considered non-severe." [*Id.*] 108–09, 121. The state agency doctors did not impose any functional limitations in connection with plaintiff's mental impairments. In finding these opinions persuasive, the ALJ stated that they were "consistent with and supported by the evidence available to them at the time the[y] were prepared," and that the additional evidence provided thereafter at the hearing level did "not reflect a severe mental impairment during the period at issue." [*Id.*] 26–27. The ALJ concluded that there was "little, if any, documentation of mental status changes on exams to support more than a mild limitation in any mental area of

[4] The Court acknowledges that the state agency doctors found "mild" limitations in interacting with others and in adapting or managing oneself and the ALJ found plaintiff had no limitation in these areas, but plaintiff does not raise any direct challenge as to this discrepancy. At most, plaintiff observes in his reply brief that the state agency doctors "opined to mild limitations in four mental domains." [21] 4. *See, e.g.*, *Martin v. Kijakazi*, 2022 WL 1681656, at *3 (7th Cir. May 26, 2022) (noting that the plaintiff had "waived [an] argument by failing to raise it in his opening brief"); *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived.").

functioning" and that even during his brief inpatient admissions, plaintiff "was not noted to display any significant impairment of focus or attention, memory or behavior." [*Id.*] 27. The ALJ also concluded that plaintiff "engaged in a number of activities that indicate the capacity for mental and physical activities indicating no severe mental impairment, including driving, care and custody of a young child, handling of finances, and participation in his medical care." [*Id.*]

Plaintiff suggests that the location of this assessment within the ALJ's decision was reversible error, pointing out that courts "have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four." [13] 6–7 (quoting *Patricia A.G. v. Kijakazi*, No. 21 C 05573, 2023 WL 2683470, at *3 (N.D. Ill. Mar. 29, 2023)). *See also* [21] 2–3. Although the five steps of the sequential evaluation process are distinct and an ALJ must sufficiently comply with each step, the Seventh Circuit has encouraged reviewing courts to read an ALJ's decision holistically. *See, e.g.*, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985). The Court will not discount information or an ALJ's consideration of the evidence "simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout [her] decision would be redundant." *Curvin*, 778 F.3d at 650. Here, unlike in other cases,[5] the ALJ recognized the crucial distinction between evaluation of the paragraph B criteria and assessment of the mental limitations for purposes of crafting the RFC, and then *did* engage in the required, more detailed assessment. The Court will not disregard the ALJ's evaluation only because it was placed under the step two heading rather than under the step four heading, and any organizational error is not reason enough to remand. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("The better course is to stick to our precedent, which is all about substance and not form."); *Mark M. v. Kijakazi*, No. 20 C 05063, 2022 WL 17960687, at *4 (N.D. Ill. Dec. 27, 2022); (acknowledging that "the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a proper basis for remand"). Furthermore, the ALJ did provide additional discussion of plaintiff's mental impairments later in the decision, engaging in a subjective symptom analysis related to these impairments. [10-1] 35–36. Consistent with her observations and assessment, the ALJ did not impose any non-exertional limitations connected to mental impairments in the RFC. [*Id.*] 28. *See* [*id.*] 36 ("While I assess certain functional limitations, I do not find the claimant's testimony regarding the severity or frequency of his symptoms to be fully consistent with the evidence or supportive of any greater limitations or restrictions than those I have included in the residual functional capacity set forth in this decision.").

---

[5] *Cf., e.g.*, *Michele D. M. v. O'Malley*, No. 24 C 2810, 2024 WL 4555407, at *2 (N.D. Ill. Oct. 23, 2024); *Mark M. v. Kijakazi*, No. 20 C 05063, 2022 WL 17960687, at *3–4 (N.D. Ill. Dec. 27, 2022); *Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967, at *5 (N.D. Ill. Sept. 14, 2022); *David K.*, 2022 WL 2757695, at 4–5.

The Court finds that plaintiff has not identified any error in the ALJ's assessment of the mental limitations requiring remand. Plaintiff points to his inability to do serial 7s and that he could count 3s from three to twenty-one slowly but accurately, as well as his "moderate anxiety and difficulty maintaining a train of thought with loss of focus and derailed thought processes." [13] 9 (citing [10-3] 1713–14). Plaintiff also highlights his "somewhat over-productive speech" and "somewhat hurried speech." [*Id.*] 10 (citing [10-3] 1712–13). And plaintiff asserts that the examiner observed his "difficulty with maintaining his train of thought secondary to lack of confidence in self; he lost his focus and appeared to be hurried by his anxiety; thought processes were somewhat easily derailed by preoccupations with anxiety and mild tendencies to be over-reactive to innocuous stimuli; he related in an anxious and apprehensive manner." [*Id.*] (quoting [10-3] 1713). *See also* [*id.*] 10 (pointing to plaintiff's "documented problems with anxiety and maintaining focus and concentration" and "diminished attention to critical role functions"). All of this information is from plaintiff's February 2021 consultative exam, which the ALJ considered and discussed in detail. *See* [10-1] 25–26. In addition to these abnormal observations, the ALJ also noted normal observations from the February 2021 consultative exam, including that plaintiff was oriented to person, place, time, and situation, he was easily redirected and refocused, he was not preoccupied with obsessions or phobias, there were no disturbances in perception, and the examiner opined that plaintiff "could effectively manage his own funds." [10-1] 26. Plaintiff also notes his reported problems concentrating, pointing to a statement in his function report that "in pain it's hard to concentrate." [13] 10 (citing [10-1] 310). But the ALJ did not ignore this evidence either. The ALJ referred to plaintiff's function report throughout the decision and acknowledged other similar evidence in the record, such as plaintiff's testimony on his "decreased ability to concentrate" and that during the February 2021 consultative exam, plaintiff "denied problems with memory or concentration except for at times preoccupation with pain." [10-1] 24, 26. *See also* [10-1] 26 (noting that during the February 2021 consultative exam, plaintiff "reported his primary concerns were related to pain, not psychological"). And plaintiff highlights examinations showing rapid and pressured speech with hyperactive behavior. [13] 10 (citing [10-3] 1583). Again, the ALJ considered this record evidence, noting that during a neurological and psychiatric examination in January 2020, plaintiff "had rapid speech, hyperactive behavior, and his legs were shaking." [10-1] 25 (citing [10-3] 1583).

Plaintiff's reply accuses the ALJ of simply summarizing some "normal" mental health findings "without engaging with probative abnormal ones in the record." [21] 3 (citing [10-1] 310; [10-3] 1583, 1713). But as demonstrated herein, that is simply not correct and the ALJ considered all of this evidence. Plaintiff has not identified any record evidence that the ALJ ignored or failed to include in her discussion of plaintiff's mental impairments. *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024) (reminding that plaintiffs "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record");

*Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (noting that "an ALJ need only include limitations that are supported by the medical record"). Nor does plaintiff suggest or describe what functional restrictions the ALJ should have included in the RFC and hypotheticals to the VE to account for his mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. *Linda F. v. Bisignano*, No. 22 C 6387, 2025 WL 1661897, at *6 (N.D. Ill. June 12, 2025) ("Plaintiff does not identify any specific mental accommodations that she contends should have been encompassed in the RFC."); *Rosemarie A. v. Dudek*, No. 22 C 4668, 2025 WL 1222652, at *9 (N.D. Ill. Apr. 28, 2025) ("Claimant does not identify any specific mental accommodations that she contends should have been encompassed in the RFC.").[6]

Based on the foregoing, the Court finds that plaintiff has not identified any error in the ALJ's assessment of plaintiff's mental limitations warranting remand. The Court is "able to trace the path of the ALJ's reasoning from evidence to conclusion," *Joseph M. v. Kijakazi*, No. 23 C 0088, 2023 WL 7167523, at *4 (N.D. Ill. Oct. 31, 2023), and substantial evidence supports the ALJ's decision not to include limitations in mental functioning in the RFC. Accordingly, remand on this issue is not appropriate.

Plaintiff also argues that the ALJ erred by failing to resolve an evidentiary conflict between competing vocational expert testimonies. [13] 11. VE Pagella testified at the hearing and at that time, plaintiff's attorney did not object. [10-1] 85. As the ALJ noted, plaintiff then submitted a post-hearing objection to the VE's testimony "regarding transferability of skills." [10-1] 17 (citing [*id.*] 358). In support of this objection, plaintiff attached a report from a retained expert, VE Entenberg. [10-1] 356–57. The ALJ stated that "[t]his objection was not made at the hearing, and the representative did not indicate at the hearing that he was seeking another witness opinion," but admitted and discussed the objection "despite the lack of notice." [*Id.*] 17, 38.[7] At the hearing, VE Pagella testified that plaintiff had transferable skills from his past work as an admissions recruiter and as a restaurant manager and that a subject hypothetical individual could perform representative occupations such as check cashier and telemarketer, jobs which do not require other skills not acquired

---

[6] *See also Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020) ("Notably, Kuykendoll posits no relevant limitations in concentration, persistence, or pace that the ALJ should have included in his RFC assessment."); *Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (noting that the plaintiff "never once has told this court what other restrictions the ALJ should have included in her hypothetical"); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) ("Critically, Dudley did not identify any limitations that the ALJ omitted and should have included in the hypothetical question."); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

[7] Raising an objection to the VE's testimony in a post-hearing brief is sufficient to preserve the objection for appeal. *Leisgang v. Kijakazi*, 72 F.4th 216, 219–20 (7th Cir. 2023); *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023).

from past relevant work. [10-1] 37, 87–89. VE Entenberg opined that the occupations of telephone solicitor and check cashier do not "have similarity to the Work Codes, MPSMS codes or to the DOT Industry" to plaintiff's past occupations of admissions recruiter and restaurant manager. [10-1] 356. VE Entenberg thus opined that telephone solicitor and check cashier were "not occupations that have directly transferable skills derived from [plaintiff's] past work and would require further training and vocational adjustment in terms of materials, processes, settings and industry." [*Id.*] The ALJ adopted VE Pagella's testimony and overruled plaintiff's objection. [*Id.*] 37–38. Plaintiff argues that the ALJ's discussion of the objection and VE Entenberg's opinion was deficient and that in failing to resolve the evidentiary conflict between the opposing opinions, the ALJ's "decision is premised upon unreliable VE testimony" and not supported by a logical bridge. [13] 11–12.

However, the Court need not reach this argument. VE Entenberg's opinion and plaintiff's objection to VE Pagella's testimony concern the ALJ's alternative finding at step five. Given that the Court finds that the ALJ did not err in her assessment of plaintiff's mental impairments and her conclusion not to incorporate any limitations in mental functioning in the RFC, there is no error in the hypotheticals posed to VE Pagella, no objection to VE Pagella's testimony that plaintiff was capable of performing his past relevant work, and no argument that the ALJ erred in adopting this conclusion at step four. The Court denies plaintiff's request to remand on this basis.

## B.    Evaluation of Plaintiff's Subjective Symptoms

Plaintiff asserts that the ALJ's symptom evaluation violated SSR 16-3p and is not supported by the evidence. [13] 12–14. The "Court will uphold an ALJ's credibility determination unless that determination is 'patently wrong.'" *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015)). An ALJ's credibility determination is "patently wrong" where it lacks any explanation or support or is based upon errors of fact or logic. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (collecting cases).

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of" his alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" [10-1] 30. In assessing plaintiff's mental limitations, the ALJ concluded that plaintiff "engaged in a number of activities that indicate the capacity for mental and physical activities indicating no severe mental impairment, including driving, care and custody of a young child, handling of finances, and participation in his medical care." [*Id.*] 27. The ALJ's decision summarized plaintiff's activities of daily living more thoroughly in

evaluating the paragraph B criteria. [*Id.*] 23–24. Later, the ALJ reiterated plaintiff's hearing testimony on his activities:

> As for activities of daily living, he testified that during the period at issue, he had custody of a nine-year-old granddaughter for about 18 months. He further confirmed that he was responsible for making sure his granddaughter had her asthma medication and he took her to doctor appointments. He testified that currently he lives alone but has had a girlfriend 'off and on' for the past decade. He testified that he did grocery shop in stores, but someone was with him to do the lifting.

[*Id.*] 29. Throughout her summary of the medical record, the ALJ included treating notes and reports that documented plaintiff's treatment history and medications, compliance with doctors' directives, and hurdles plaintiff faced at times when trying to receive treatment. [*Id.*] 30–31, 33. Finally, the ALJ's decision provided a dedicated paragraph to her evaluation of plaintiff's subjective symptoms, finding that "the evidence generally [did] not support the alleged loss of functioning during the period at issue" and stating that in reaching these findings, the ALJ "considered a variety of factors in accordance with SSR 16-3p and 20 CFR 404.1529(c)(3)." [*Id.*] 35. The ALJ provided the following on plaintiff's physical impairments:

> He testified that he was not certain if he experienced any side effects from the medications he was prescribed during the period at issue. Within the Function Reports he did not indicate that he experienced any medication side effects (Exhibits 4E/12; 8E/8). As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because examinations of record during the period at issue indicated the claimant being in no acute distress (Exhibits 5F/120, 124, 128, 130, 134; 8F/10, 68, 168; 10F/12, 29, 86, 99; 15F/37; 17F/3; 20F/48; 28F/15; 30F/13). In addition, despite alleging disabling pain from degenerative joint disease of the knees and degenerative disc disease of the lumbar spine examinations of record during the period at issue indicated the claimant having a normal gait without assistive devices (Exhibits 4F/11; 5F/21, 94, 98, 100, 106, 108, 120, 124, 128, 130, 134; 8F/69, 117; 9F/67; 10F/66; 12F/4; 17F/12; 20F/48; 26F/20; 28F/15). Moreover, he has not had physical therapy, injections or other lumbar treatment for his lumbar pain. I note he had multiple hospital admissions in 2020 and 2021 for pancreatitis at which times he denied having back pain or arthralgias (Exhibits 8F/167; 24F/52; 26F/19; 27F/9; 30F/33). Further, there is no documentation of any imaging of his shoulders or treatment for "shoulder pain." I note pain is not a diagnosis, it is a symptom, and no symptom can establish the existence of impairment (20 CFR 404.1529).

[*Id.*] As to plaintiff's mental impairments, the ALJ provided the following:

> Moreover, he had very minimal complaints of mental health symptoms reported to any doctor before the April 2020 emergency department visit when he complained of symptoms of chest pain and shortness of breath along with reporting having had a panic attack about stressors (Exhibit 8F/111 −131). However, he was not referred for any mental health treatment until August 2020 when his primary care provider at Access Community Health referred him to Behavioral Health (Exhibit 9F/98). Further, he testified to having had memory issues involving dates and timelines. However, with his testimony he was able to recall details of his job as a college admission recruiter that he had ten years ago. At the hearing, the claimant categorically denied that he was ever drinking daily or that he ever told any medical provider that he was. However, given that statements about daily drinking appear multiple times in the record, and not all in notes of the same medical provider, and given the admissions for alcoholic acidosis, alcoholism pancreatitis, and alcohol intoxication detailed above, this is clearly not supported. Yet, I note that despite the physical effects of alcohol, when admitted for treatment of alcoholic pancreatitis, he was not noted to show any confusion, memory loss, or difficulty with interaction or communication. He routinely displayed normal behavior and normal mood and affect (Exhibits 1F/37, 41; 8F/74, 79, 168; 9F/67; 10F/66, 86, 99; 12F/6; 13F/16; 17F/13, 14; 20F/48; 24F/40; 26F/20; 28F/15; 30F/13). Thus, I find consistent with the State agency consultant opinions that his mental impairments were non-severe.

[*Id.*] 35–36.

Plaintiff identifies three ways in which the ALJ erred in evaluating plaintiff's subjective symptoms. First, plaintiff argues that the ALJ erred in relying upon findings that plaintiff was in "no acute distress" because this is not relevant to whether plaintiff's allegations were consistent with the record. [13] 13. *See also* [21] 7 (plaintiff's reply asserting that this is "an irrelevant medical notation"). Some courts have criticized ALJs for relying on medical record notes of "no acute distress" and found such evidence unpersuasive. *See, e.g.*, *Barnett v. Berryhill*, No. 18-CV-072, 2019 WL 1219544, at *5 n.4 (N.D. Ind. Mar. 15, 2019); *Wanserski v. Colvin*, No. 14-cv-1033, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015). On the other hand, "a significant number of other courts have ruled that a finding of 'no acute distress' is a relevant factor for an ALJ to consider in a symptom evaluation, especially when accompanied by other findings." *John J. v. Kijakazi*, No. 20 CV 50118, 2021 WL 3910750, at *5 (N.D. Ill. Sept. 1, 2021). *See, e.g.*, *Martin D. M. v. Kijakazi*, No. 22 C 5168, 2023 WL 8601522, at *8 (N.D. Ill. Dec. 12, 2023); *Kurt. A. v. Kijakazi*, No. 21 C 6275, 2023 WL 2663757, at *3 (N.D. Ill. Mar. 28, 2023); *Spencer v. Saul*, 2021 WL 1199027, at *13

(C.D. Ill. Mar. 30, 2021) (collecting cases). *See also Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010). As in these other cases, the ALJ did not rely solely on findings that plaintiff was in "no acute distress." And the medical records cited by the ALJ showing "no acute distress" contained other normal findings supporting the ALJ's conclusion. *Cf. Swiecichowski v. Dudek*, 133 F.4th 751, 759 n.6 (7th Cir. 2025). At the very least, even if it was improper for the ALJ to rely on these findings, it is not "reversible error" as plaintiff argues and the Court cannot find that the ALJ's subjective symptom analysis was "patently wrong" solely on this basis. *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) ("Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination."). Seventh Circuit cases have found that "flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms" because "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are[.]" *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original) (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). *See also, e.g., Romona R. B. v. O'Malley*, No. 23-cv-50183, 2024 WL 4226277, at *5 (N.D. Ill. Sept. 18, 2024); *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *12 (N.D. Ill. Aug. 11, 2022); *Brenda L. v. Saul*, 392 F.Supp.3d 858, 870 (N.D. Ill. 2019).

Second, plaintiff criticizes the ALJ for faulting plaintiff for not undergoing physical therapy or injections for lumbar pain and for denying back pain when he was hospitalized for pancreatitis. [13] 13. Plaintiff asserts that the latter statement is illogical because plaintiff "would not have reasonably been expected to note back pain during a hospital visit for an acute condition such as pancreatitis." [*Id.*] But the ALJ's observation was accurate; in each of these cited records, a "review of systems" noted that plaintiff was "negative for back pain." *See* [10-2] 1164; [10-4] 2326; [10-5] 2555, 2727, 2927. It is not error for the ALJ to note that during physical exams at the hospital on certain dates, regardless of the reason for the visit, plaintiff did not report back pain. Plaintiff also argues that the ALJ "failed to substantiate that physical therapy or lumbar injections were required to corroborate [plaintiff's] proposed limitations" and suggests that the ALJ impermissibly played doctor. [13] 13. The regulations instruct ALJs to consider certain factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, including treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3)(v). *See also Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("An ALJ is entitled to consider the course of a claimant's treatment."). It is not entirely clear to the Court whether the ALJ's statement that plaintiff "has not had physical therapy, injections or other lumbar treatment for his lumbar pain" is an observation that plaintiff was not compliant with his prescribed course of treatment or that plaintiff's medical providers did not deem his lumbar/lower back issues warranted such treatment. Regardless, the ALJ's decision contains discussion to support either conclusion. As the ALJ pointed out earlier in

the decision, medical records demonstrate that plaintiff was referred to physical therapy for his lower back pain on at least one occasion. [10-1] 32 (citing [10-3] 1723, 1726). The ALJ observed that nevertheless, follow up records "noted that the claimant had not completed physical therapy for his complaint of lower back pain." [*Id.*] 33 (citing [10-4] 2230 (noting that "patient's back pain is improving" and that he "did not have physical therapy")). The regulations state that "if the individual fails to follow prescribed treatment that might improve symptoms, [ALJs] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9. Additionally, to the extent the ALJ suggested that the prescribed course of treatment for plaintiff's lumbar/back pain was conservative, "[r]eceipt of conservative treatment is a legitimate reason to find a claimant not entirely credible." *Calvin B. v. Kijakazi*, No. 20 C 3404, 2022 WL 3018313, at *7 (N.D. Ill. July 29, 2022). *See also Frank S. v. Kijakazi*, No. 20-cv-3429, 2022 WL 832660, at *8 (N.D. Ill. March 21, 2022) ("The Seventh Circuit has consistently affirmed that conservative treatment . . . is a proper reason to discount a claimant's symptom allegations."). The medical records do not appear to include any prescribed injections[8] or other treatment methods for plaintiff's lumbar/back issues, but rather demonstrate only routine medication management for back pain. *See, e.g.*, [10-3] 1733, 1739; [10-5] 2837, 2857–62. Plaintiff does not point to any evidence to the contrary.

Third, plaintiff argues that the ALJ's finding that plaintiff "had very minimal complaints of mental health symptoms reported to any doctor" is unsupported by and "divorced from the evidence." [13] 13–14 (quoting [10-1] 35). Plaintiff asserts that the record reflects that he consistently reported mental health complaints. [*Id.*] 14 (citing [10-3] 1494, 1583, 1688, 1695, 1711–14; [10-5] 3057). However, the full observation in the ALJ's decision was that plaintiff "had very minimal complaints of mental health symptoms reported to any doctor *before the April 2020 emergency department visit*" and the ALJ observed that plaintiff was not referred for any mental health treatment until August 2020. [10-1] 35–36. All but one[9] of the records that plaintiff identifies are dated after April 2020, beginning with August 10, 2020, and plaintiff has therefore not shown that the ALJ's statement was inaccurate.

Based on the foregoing, the Court finds that plaintiff has not demonstrated that the ALJ's subjective symptom analysis was patently wrong and requires reversal. The ALJ's assessment need not be flawless and the ALJ's decision provided sufficient supporting evidence for this Court to uphold the credibility determination. *Tutwiler*, 87 F.4th at 859; *Halsell*, 357 F. App'x at 722–23. "Even if the ALJ's reasoning on [certain points] 'was not airtight,' the Court cannot say h[er] overall

---

[8] As noted by the ALJ, there are many documented orders for injections throughout the record, but these are cervical epidural steroid injections. [10-1] 30–31, 33.

[9] And as the Court noted in the preceding section, the ALJ explicitly acknowledged that this record documented plaintiff's "rapid speech, hyperactive behavior, and [that] his legs were shaking." [10-1] 25 (citing [10-3] 1583).

finding was 'patently wrong.'" *Frank S.*, 2022 WL 832660, at *8 (citations omitted). Accordingly, the Court denies plaintiff's request to remand on this basis.

## Conclusion

For the foregoing reasons, plaintiff's request to reverse and remand [13] is denied, defendant's motion for summary judgment [19] is granted, and the decision denying the application for benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 17, 2025**